31

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

D-1   ANNE LOCKWOOD

D-2   FUPING LIU, and

D-3   MICHAEL HAEHNEL,
       a.k.a. MICHAEL HÄHNEL

             Defendants.

Case: 2:06-cr-20331
Assigned To: Hood, Denise Page
Referral Judge: Scheer, Donald A
Filed: 06-20-2006 At 04:26 PM
INDI USA V. SEALED MATTER (3 DFTS)
TAM

VIOLATIONS:

18 U.S.C. § 2:      AIDING AND ABETTING

18 U.S.C. § 371:     CONSPIRACY

18 U.S.C. §§ 1343; 1346: WIRE FRAUD

18 U.S.C. §§ 1832(a)(1)-(4): THEFT OF
                            TRADE SECRETS

18 U.S.C. § 2314: INTERSTATE AND
                  FOREIGN TRANSPORTATION OF
                  STOLEN PROPERTY

18 U.S.C. § 1030(a)(4):  COMPUTER FRAUD

18 U.S.C. § 1001:      FALSE STATEMENTS

# INDICTMENT

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

1.     At all times pertinent to this indictment:

(a)    **"Proprietary information,"** for purposes of this indictment, is information in which a person or entity has an ownership or property interest.

(b)     A **"trade secret"** is defined generally under federal law as including all forms and types of information (financial, business, scientific, technical, economic, or engineering) that the owner has taken reasonable measures to keep secret, and that has independent economic value because it is not generally known or ascertainable by the public.

(c)     When an employee signs a **"confidentiality agreement,"** he is promising in writing not to disclose the confidential, proprietary, or trade secret information belonging to his employer.

(d)     **Metaldyne** Corporation (Metaldyne) is a Delaware business corporation headquartered in Plymouth, Michigan, engaged in interstate commerce.  Metaldyne is a supplier of automotive parts.  Metaldyne has developed a proprietary and confidential manufacturing process to heat and mold powdered metal and press it into solid metal parts, which are sold in interstate commerce.

(e)     **GKN Sinter Metals**  (GKN) is a wholly-owned subsidiary of GKN, PLC, a British public limited company with facilities around the world, including GKN Sinter Metals, which is headquartered in Auburn Hills, Michigan.  Like Metaldyne, GKN has developed a proprietary and confidential powdered metal manufacturing process that it uses to make automotive parts that are sold in interstate commerce.

(f)     **Metaldyne** and **GKN** were the only manufacturing companies in the world who had each separately developed proprietary and confidential manufacturing techniques that could successfully fabricate powdered metal into large, heavy-duty automotive parts, such as connecting rods, that were strong enough to be assembled into large engines.

(g)     **Metaldyne** spent several years on research, development and testing to create the **"preform design"** for their powdered metal connecting rod.  The preform design is an

2

interactive spreadsheet containing mathematical calculations and precision measurements that are essential to the successful manufacture of Metaldyne's powdered metal connecting rods.

      (h)     **Metaldyne** and **GKN** each took reasonable measures to keep secret the processes, designs, and costs associated with the techniques they had developed to manufacture automotive and other manufacturing parts from powdered metal. This information was valuable because it was secret. Consequently, their confidential information regarding the processes, designs, and costs for their powdered metal manufacturing techniques was a trade secret.

      (I)     **ANNE LOCKWOOD** (D-1) was Vice President of Sales for Metaldyne until in February, 2004, when she left the company. LOCKWOOD had signed a confidentiality agreement in 1989 when she began work for Masco Tech, the predecessor company of Metaldyne. As an officer of Metaldyne, LOCKWOOD was aware of her responsibility to keep and maintain the confidentiality of Metaldyne's proprietary information.

      (j)     **FUPING LIU** (D-2) was also employed by Metaldyne until in April 2004. At that time, LIU left Metaldyne and began working for GKN's offices in Shanghai, China, where he worked until February, 2005. LIU had signed confidentiality agreements with both Metaldyne and, later, with GKN.

      (k)     **MICHAEL HAEHNEL** (D-3), also known as MICHAEL HÄHNEL, was employed by Metaldyne as a senior engineer until February, 2005. As an employee of Metaldyne, HAEHNEL signed a confidentiality agreement with Metaldyne. **MICHAEL HAEHNEL** (D-2) and **ANNE LOCKWOOD** (D-1) were husband and wife.

      (l)     When they were employees of Metaldyne, **ANNE LOCKWOOD, FUPING LIU** and **MICHAEL HAEHNEL** signed confidentiality agreements in which they promised not to disclose any confidential, proprietary, or trade secret information unless

3

authorized to do so.  In addition to their duties under such agreements, **FUPING LIU** and

**MICHAEL HAEIINEL** owed fiduciary duties to GKN and Metaldyne, respectively, to protect

the property of their employers, and to keep and maintain the confidentiality of their employers'

proprietary information.

    (m)    **Chongqing Huafu Industry Company**, Ltd., **(Huafu)** is a Chinese automotive

parts manufacturing company located in Chongqing, China.

    (n)    **Ningbo Tongmuo New Materials Company**, Ltd., **(Ningbo)** is a

Chinese powdered metal parts manufacturing company located in Ningbo, China.

    (o)    **Liaoning Shuguang Automotive Corporation Group**, Ltd. **(SG**

**Auto)** is a Chinese manufacturing company with offices in Michigan, China, and South Korea,

including SG Automotive, Inc., located in Troy, Michigan.

    (p)    **International Truck and Engine Corporation (International)** is a subsidiary of

NAVISTAR INTERNATIONAL CORPORATION, a Delaware corporation.  International Truck

manufactures heavy trucks, truck engines and related parts, and buys connecting rods, or "con-

rods" designed and manufactured by Metaldyne, for assembly into truck engines manufactured by

International that are sold in interstate commerce.

    (q)    All **dates** in this indictment are alleged to be **"on or about"** the specific

date stated.

## COUNT 1
### (18 U.S.C. § 371 – CONSPIRACY)

D-1  ANNE LOCKWOOD,
D-2  FUPING LIU
D-3  MICHAEL HAEHNEL

2.    The General Allegations are incorporated into this count by reference.

3.    From February 2004 until September 2004, the exact dates being unknown to the grand jury, in the Eastern District of Michigan, Southern Division, and elsewhere, defendants **ANNE LOCKWOOD** (D-1), **FUPING LIU** (D-2), and **MICHAEL HAEHNEL** (D-3), together with persons known and unknown to the grand jury, did knowingly and unlawfully combine, conspire and agree together to steal confidential, proprietary, and trade secret information from Metaldyne, and from GKN, and use it in order to benefit Chinese competitors of Metaldyne and GKN, so that the defendants could earn commissions from the sales made by the Chinese competitors.

4.    In particular, the defendants agreed:

(a)    to defraud Metaldyne and GKN of their property, that is, confidential information pertaining to their processes, designs, costs, and business plans associated with powdered metal manufacturing, and of their intangible right to the honest services of their employees;

(b)    to steal trade secrets from Metaldyne, and from GKN, along with other confidential information, and copy and convey such information to others, including to Chinese manufacturing companies who were competitors of Metaldyne and GKN;

(c)    to access protected computers, exceeding authorization, to obtain and use such information in order to further this fraud; and

(d)    to transport stolen property in interstate and foreign commerce;

all for the purpose of getting a percentage commission based on the sales generated by the Chinese companies using the information they had stolen. In carrying out this unlawful plan, the defendants agreed to commit acts which violated the following federal laws, among others:

(a)     **Wire Fraud**, in violation of Title 18, United States Code, Sections 1343 and 1346, by transmitting, and causing the transmission, by means of wire communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing a scheme or artifice to defraud, or for obtaining money and property by unlawfully taking confidential and proprietary information owned by Metaldyne and GKN, and by depriving Metaldyne and GKN of its intangible right to the honest services of its employees;

(b)     **Theft of Trade Secrets,** in violation of Title 18, United States Code, Section 1832(a)(1) - (4), by knowingly and intentionally stealing, with the intent to convert, information (including trade secrets owned by Metaldyne) that was related to or included in products in interstate or foreign commerce, to the economic benefit of a person other than Metaldyne, and intending and knowing that the offense would injure Metaldyne, in violation of Title 18, United States Code, Section 1832(a)(1); and copying, duplicating, transmitting, delivering, sending, communicating and conveying such information without authorization, in violation of Title 18, United States Code, Section 1832(a)(2); and receiving and possessing such information, knowing it had been stolen or appropriated, obtained, or converted without authorization, in violation of Title 18, United States Code, Section 1832(a)(3); and attempting to commit the above crimes, in violation of Title 18, United States Code, Section 1832(a)(4);

( c)     **Computer Fraud,** in violation of Title 18, United States Code, Section 1030(a)(4), by knowingly and with intent to defraud exceeding authorized access to a protected computer,

thereby furthering the intended fraud and obtaining something valued at over $5,000 in a 1-year period;

(d)     **Interstate and Foreign Transportation of Stolen Property,** in violation of Title 18, United States Code, Section 2314, by transporting, transmitting, and transferring in interstate and foreign commerce goods, wares and merchandise of the value of $ 5,000 or more, knowing the same to have been stolen, converted, or taken by fraud.

## OBJECTS OF THE CONSPIRACY

5.     The main objects of the unlawful conspiracy were:

(a)     To take confidential and proprietary information owned by Metaldyne, use it to assist Huafu in copying Metaldyne's powdered metal manufacturing techniques, and enable Huafu to replace Metaldyne as the supplier of the 2007 model year connecting rod to International. As a result of their conduct, the defendants intended to obtain lucrative sales commissions.

(b)     To take confidential and proprietary information owned by Metaldyne and use it to assist Huafu, Ningbo and other Chinese manufacturers to compete more effectively against Metaldyne in the production and supply of other powdered metal products (such as "tubular flanges" and "transfer sprocket casings"). The Chinese sales of those products would provide additional commissions to the defendants.

( c)     To take confidential and proprietary information owned by Metaldyne and GKN in order to benefit a manufacturer's representative company created by the coconspirators. The purpose of this manufacturer's representative company was to obtain customers in the United States for Chinese powdered metal manufacturers, and assist Chinese competitors to compete more effectively against United States-based manufacturers, such as Metaldyne and GKN. The

7

coconspirators stood to gain financially from the sales generated through this manufacturer's representative company.

**METHOD, MANNER AND MEANS**

6.      **ANNE LOCKWOOD** (D-1) and **FUPING LIU** (D-2)  furthered the objects of the conspiracy by formulating a plan to develop Chinese manufacturing sources of  powdered metal products that could be sold in the United States market.  In particular, **LOCKWOOD** and LIU planned to develop Huafu and Ningbo, both Chinese metal manufacturers, into suppliers for the U.S. market who would be direct competitors to Metaldyne and GKN in the production of connecting rods and other smaller parts such as lawn and garden parts, transfer case sprockets, and exhaust flanges.

7.      **ANNE LOCKWOOD** (D-1) also furthered the objects of the conspiracy by:

(a)      On June 22, 2004, **LOCKWOOD** formed **PP Sales and Engineering, Inc.** (PPSE), a Michigan business corporation, to provide manufacturer's representative services for Chinese manufacturing companies seeking to enter the United States market.  **LOCKWOOD** made herself "President" of PPSE, and named **HAEHNEL** "President, Engineering."  The "China Branch" of PPSE was organized under the name Tianhou Import and Export Company, and was located in Shanghai, China.  **FUPING LIU** was the "Chairman of the Board" of Tianhou Import and Export Company.  **LIU**'s wife, Shuqin (also known as "Sue") Wang was "President" of  Tianhou Import and Export Company.

(b)      **LOCKWOOD** obtained Metaldyne's part drawings and cost information pertaining to lawn and garden equipment and "turbo flanges," and sent them to Huafu and Ningbo.

(c)      **LOCKWOOD** obtained Metaldyne's internal cost and process information for the manufacture of connecting rods and provided it to **FUPING LIU** at GKN and to Huafu.

(d)     **LOCKWOOD** obtained Metaldyne's "preform design" for the connecting rod it was manufacturing for International, along with numerous other files stolen from Metaldyne.

8.     **FUPING LIU** (D-2)  furthered the objects of the conspiracy by:

(a)     **LIU** contributed his knowledge of Chinese companies that were capable of competing effectively against Metaldyne and GKN;

(b)     **LIU** introduced **ANNE LOCKWOOD** to Sun Jin, the representative of Huafu.

(c)     **LIU** gave GKN's confidential internal cost information to **ANNE LOCKWOOD**.

(d)     **LIU** gave Huafu confidential internal digital images of the forging tools and molding tools Metaldyne used to manufacture powdered metal connecting rods.

(e)     **LIU** obtained Metaldyne's "preform design" for the connecting rod it was manufacturing for International Truck, along with numerous other stolen files from Metaldyne.

9.     **MICHAEL HAEHNEL** (D-3)  furthered the objects of the conspiracy by:

(a)     **HAEHNEL** persuaded Metaldyne to pay for himself and **LOCKWOOD** to travel to China from May 28 through June 6, 2004 by claiming that the trip was in Metaldyne's interest. **HAEHNEL** concealed from Metaldyne that the true purpose of the trip was to enable **LOCKWOOD** to meet with **FUPING LIU** and officials from Huafu in order to discuss developing Huafu as a competitor to Metaldyne in powdered metal manufacturing.

(b)     **HAEHNEL** accessed Metaldyne's computer system and duplicated hundreds of Metaldyne's internal confidential and proprietary files, including the preform design for the production connecting rod; **HAEHNEL** loaded the information onto compact disks, removed the disks, and delivered them to **LOCKWOOD** to be used for the benefit of Huafu. **HAEHNEL** had no authority to do this, as he well-knew.

## OVERT ACTS

10.     In furtherance of the conspiracy and to accomplish its objects, on or about the dates set out below, in the Eastern District of Michigan and elsewhere, one or more of the defendants performed and caused to be performed the following overt acts, among others:

(a)     The conspirators communicated with each other by e-mail in order to discuss the details of their plans, to convey proprietary information to Huafu, and further the development of Chinese competitors to Metaldyne.

(b)     **LOCKWOOD** and **HAEHNEL** traveled to China from May 28, 2004 through June 6, 2004, and **LOCKWOOD** met with Huafu officials in furtherance of the conspiracy.

(c)     **HAEHNEL** created compact disks containing Metaldyne's confidential and proprietary information and gave them to **LOCKWOOD**.

(d)     The offenses charged in **Counts 2 through 24 and Counts 29 through 55, 57, 58, 60, 61, 63 and 64** were within the scope of the conspiracy and were committed by the conspirators in furtherance of the conspiracy, as each conspirator could reasonably foresee. These offenses are alleged and incorporated into this count as overt acts.

11.     All in violation of Title 18, United States Code, Section 371.

**COUNTS 2 through 24**
(18 U.S.C. §§ 1343; 1346 and 2 –
WIRE FRAUD; AIDING AND ABETTING)

D-1     ANNE LOCKWOOD,
D-2     FUPING LIU
D-3     MICHAEL HAEHNEL

12.     The General Allegations and paragraphs 5 through 10(c) of Count 1 are

incorporated into this count by reference.

13.     On or about the dates listed below, in the Eastern District of Michigan, Southern

Division and elsewhere, the named defendant(s), having devised a scheme or artifice to defraud

and to obtain money and property by means of false or fraudulent pretenses, representations or

promises by unlawfully taking confidential and proprietary information owned by Metaldyne and

GKN, and by depriving Metaldyne and GKN of its intangible right to the honest services of its

employees, that is, the honest services of **MICHAEL HAEHNEL** and **FUPING LIU**, transmitted

and caused to be transmitted by means of wire or radio communication in interstate or foreign

commerce, writings, signs, signals, pictures or sounds.

14.     All of the wire transmissions in these counts traveled in interstate or foreign

commerce.

15.     The named defendant(s) intended each of the wire transmissions in these counts to

further the execution of the scheme.

| Ct | Defendant(s) | Date | Wire Transmission | Purpose of Wire Transmission |
|----|--------------|------|-------------------|------------------------------|
| 2 | **LOCKWOOD (D-1)** **LIU (D-2)** | 5/1/04 | e-mail from Shanghai, China, to Rochester Hills, Michigan. | LIU introduced LOCKWOOD to a contact person at HUAFU. |
| 3 | **LOCKWOOD (D-1)** **LIU (D-2)** | 5/11/04 | e-mail from Rochester Hills, Michigan to Shanghai, China. | Explains plan to travel to China "on Michael's ticket" to create a sales opportunity for PPSE with the Shenyang Machine Tool Company. |

11

| Ct | Defendant(s) | Date | Wire Transmission | Purpose of Wire Transmission |
|---|---|---|---|---|
| 4 | LOCKWOOD (D-1) | 5/17/04 | e-mail Michigan, through California, to Michigan. | Sends copy of "Request for Quote" LOCKWOOD had sent to Huafu with attached drawings and cost information. |
| 5 | LOCKWOOD (D-1) LIU (D-2) | 5/17/04 | e-mail from Rochester Hills, Michigan to Shanghai, China. | Discusses goal of "P/F Connecting Rod Development," including the "2007 MY (Model Year)" connecting rod for International, as well as GM and other companies. |
| 6 | LOCKWOOD (D-1) | 5/18/04 | e-mail from Michigan to China. | Describes connecting rods as "the most real and lucrative opportunity;" points out that "[i]f a Chinese company does not get involved now . . . MD or GKN will be first to market in China with a rod, giving them a prime position." |
| 7 | LIU (D-2) HAEHNEL (D-3) | 5/22/04 | e-mail from Michigan to Shanghai, China. | Advises that HAEHNEL will be using his "private" email account for future China business. |
| 8 | LOCKWOOD (D-1) | 6/1/04 | e-mail from China to Michigan. | Requests Metaldyne employee to move LOCKWOOD's former computer files so "Michael can access my old files". |
| 9 | LOCKWOOD (D-1) | 6/2/04 | e-mail from China to Michigan. | States "things went extremely well in China;" cautions not to let Metaldyne "get a whiff of what I am trying to attempt." |
| 10 | LOCKWOOD (D-1) | 6/6/04 | e-mail from China to Michigan. | Requests that LOCKWOOD provide quote for "transfer case sprockets." |
| 11 | LOCKWOOD (D-1) LIU (D-2) | 6/9/04 | e-mail from shuqin_wang @hotmail.com from China to Michigan. | Requests Metaldyne "price and cost" and "process" information to assist Huafu in developing transfer case sprockets. |
| 12 | LOCKWOOD (D-1) | 6/11/04 | e-mail from Michigan, through California, to Michigan. | Requests Metaldyne employee to provide blue prints for transfer case sprockets. |
| 13 | LOCKWOOD (D-1) LIU (D-2) | 6/19/04 | e-mail from China to Michigan. | LIU sends spreadsheet in Chinese containing process and cost information obtained from Metaldyne. |

| Ct | Defendant(s) | Date | Wire Transmission | Purpose of Wire Transmission |
|---|---|---|---|---|
| 14 | LIU (D-2) | 6/21/04 | e-mail from China, to California, to China. | LIU sends image of Metaldyne's forging tools to Huafu. |
| 15 | LIU (D-2) | 6/21/04 | e-mail from China, to California, to China. | LIU sends image of Metaldyne's molding tools to Huafu. |
| 16 | LOCKWOOD (D-1) LIU (D-2) | 6/21/04 | e-mail from Michigan to China. | LOCKWOOD sends table comparing Metaldyne's internal cost information with Huafu's. |
| 17 | LOCKWOOD (D-1) LIU (D-2) | 6/21/04 | e-mail from Michigan to China. | Discusses Huafu replacing Metaldyne as supplier of connecting rod to International, and possible reduction in commissions. |
| 18 | LOCKWOOD (D-1) LIU (D-2) | 6/25/04 | e-mail from China to Michigan. | Contains confidential GKN cost information in file "020204a fpm 7701-56.xls". |
| 19 | LOCKWOOD (D-1) LIU (D-2) | 6/25/04 | e-mail from China to Michigan. | Contains confidential GKN cost information in file "022004a fpm 8301.xls". |
| 20 | LOCKWOOD (D-1) LIU (D-2) | 6/29/04 | e-mail from China to Michigan. | LIU requests LOCKWOOD to sent "a typical MD's PF rod cost sheet". |
| 21 | LOCKWOOD (D-1) | 7/6/04 | e-mail from China to Michigan. | Huafu representative states he received "rod's dwgs". |
| 22 | LOCKWOOD (D-1) | 7/30/04 | Fax from Michigan to China. | Letter from LOCKWOOD to Huafu pointing out that Metaldyne made "over 50%" of its total profits from the connecting rod. |
| 23 | LOCKWOOD (D-1) LIU (D-2) HAEHNEL (D-3) | 8/3/04 | e-mail from China to St. Mary's Pennsylvania. | Huafu sends request for a price quotation for a furnace, attaching spreadsheets containing stolen Metaldyne cost and process information, and a blue print of the 2007 model year connecting rod Metaldyne designed for International. |
| 24 | LOCKWOOD (D-1) | 8/18/04 | e-mail from Michigan to China. | LOCKWOOD discusses Abbott Furnace and Weingarten press manufacturer, attaches document containing stolen Metaldyne cost and process information. |

16.    All in violation of Title 18, United States Code, Sections 1343, 1346 and 2.

## COUNTS 25 through 28
(18 U.S.C. §§ 1343- 1346 WIRE FRAUD)

D-2    FUPING LIU

17.    The General Allegations and paragraphs 5 through 10 (c) of Count 1 are incorporated into this count by reference.

### Scheme and Artifice by FUPING LIU to Defraud GKN of GKN's Property and its Intangible Right to Honest Services

18.    In September 2004, **FUPING LIU** (D-2) and another person developed a business concept involving a process used in connection with microchip manufacture called "chemical mechanical planarization."

19.    Thereafter, **LIU** sought to find investors for this business start-up, and sent this business proposal to others seeking financial support.

20.    On October 27, 2004, **LIU** emailed the business proposal to Hai Yang Li, at SG Automotive, located in Troy, Michigan. The proposal was in the form of a PowerPoint presentation (labeled "CMPZhongwen.ppt") that related to the creation of a company called "Everest Chemsols," which would be involved in "chemical mechanical planarization."

21.    On November 8, 2004, **LIU** emailed another PowerPoint presentation to Hai Yang Li called "CMP-Share.ppt." On November 29, 2004, **LIU** emailed a feasibility study concerning the Everest Chemsols proposal to Hai Yang Li. **LIU** was seeking investors for this proposal. According to a subsequent draft of this study, **LIU** was to be the Plant General Manager and member of the Board of Directors for this company.

22.    On December 20, 2004, **LIU** emailed a file called "Site Comparison 9-29-04," which was the property of GKN, to Hai Yang Li at SG Automotive, located in Troy, Michigan. This document contained detailed information concerning the costs associated with different

14

locations for manufacturing sites in China, which was for the use of GKN in planning its China operations. This information was the property of GKN, and **LIU** well-knew he was not authorized to share it with SG Auto.

23.     On December 20, 2004, **LIU** emailed a file called "China Sinter Business Case 1104 FINAL.xls," which was confidential and proprietary property of GKN, to Hai Yang Li at SG Automotive, located in Troy, Michigan. The email transmitting this file to SG Automotive stated: "Highly Confidential." The "China Sinter Business Case" contained confidential internal projections for GKN's connecting rod manufacturing operations in China. This information was the property of GKN, and **LIU** well-knew he was not authorized to share it with SG Auto.

24.     On or about the dates specified below, in the Eastern District of Michigan and elsewhere, having devised and intending to devise the aforesaid scheme and artifice to defraud and to obtain property by means of false and fraudulent pretenses, representations, or promises, by unlawfully taking confidential and proprietary information owned by GKN, and by depriving GKN of its intangible right to the honest services of its employee, **FUPING LIU** did cause the transmission by wire in interstate and foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing, or attempting to execute the scheme and artifice to defraud, the details of which are described below:

| Ct | Defendant(s) | Date | Wire Transmission | Purpose of Wire Transmission |
|----|--------------|------|-------------------|------------------------------|
| 25 | LIU (D-2) | 10/27/04 | e-mail from China to Troy, Michigan. | Sends business proposal to SG Auto representative. |
| 26 | LIU (D-2) | 11/29/04 | e-mail from China to Troy, Michigan. | Sends feasibility study to SG Auto representative. |
| 27 | LIU (D-2) | 12/20/04 | e-mail from China to Troy, Michigan. | Sends GKN proprietary report to SG Auto representative. |

| Ct | Defendant(s) | Date | Wire Transmission | Purpose of Wire Transmission |
|----|-------------|------|-------------------|------------------------------|
| 28 | LIU (D-2) | 12/20/04 | e-mail from China to Troy, Michigan. | Sends confidential and proprietary business plan of GKN. |

25.     All of the wire transmissions in these counts traveled in interstate or foreign commerce.

26.     **FUPING LIU** (D-2) intended each of the wire transmissions in these counts to further the execution of the scheme.

### COUNTS 29 through 31
### (18 U.S.C. §§ 1832(a)(2) and (a)(4); 2 – THEFT OF TRADE SECRETS; AIDING AND ABETTING)

D-1     ANNE LOCKWOOD
D-2     FUPING LIU

27.     The General Allegations and paragraphs 5 through 10(c) of Count 1 are incorporated herein by reference.

28.     That in or about May 2004, in the Eastern District of Michigan, Southern Division, and elsewhere, **ANNE LOCKWOOD** (D-1) and **FUPING LIU** (D-2), defendants herein, while aiding and abetting each other in the same, did knowingly and intentionally, with the intent to convert information that included trade secrets belonging to Metaldyne, that were related to or included in products in interstate or foreign commerce, to the economic benefit of a person other than the owner thereof, and intending and knowing that the offense would injure the owner of the trade secret, transmit, deliver, and send, communicate and convey such information, and attempt to do so, in violation of Title 18, United States Code, Section 1832(a)(2) and (a)(4), in particular, **ANNE LOCKWOOD** (D-1) and **FUPING LIU** (D-2) did transmit, deliver, and send,

communicate and convey the following trade secret information belonging to Metaldyne, as
described in the below table:

| Ct | Description | Intended Recipient(s) |
|----|-------------|----------------------|
| 29 | Print for Tubular Flange<br>Part No. 2543, and target price | Huafu, Ningbo |
| 30 | Print for Tubular Inlet Flange<br>Part No. 0101735, and target price | Huafu, Ningbo |
| 31 | Print for Tubular Turbo Flange<br>Part No. 0102197, and target price | Huafu, Ningbo |

    29.    All in violation of Title 18, United States Code, Sections 1832(a)(2), (a)(4) and 2.

**COUNTS 32 through 52**
(18 U.S.C. §§ 1832(a)(1), (a)(2), (a)(3), (a)(4) and 2 –THEFT OF TRADE SECRETS;
AIDING AND ABETTING)

D-1    ANNE LOCKWOOD
D-3    MICHAEL HAEHNEL

    30.    The General Allegations and paragraphs 5 through 10 (c) of Count 1 are
incorporated herein by reference.

    31.    That in or about June 2004, in the Eastern District of Michigan, Southern Division,
and elsewhere, **ANNE LOCKWOOD** (D-1) and **MICHAEL HAEHNEL** (D-3), defendants
herein, did knowingly and intentionally, with the intent to convert information that included trade
secrets belonging to Metaldyne, that were related to or included in products in interstate or foreign
commerce, to the economic benefit of a person other than the owner thereof, and intending and
knowing that the offense would injure the owner of the trade secret,

    (a)    steal, or without authorization appropriate, take, and carry away such information,
in violation of Title 18, United States Code, Section 1832(a)(1);

(b)       copy and duplicate such information without authorization, in violation of Title 18, United States Code 1832(a)(2);

(c)       receive and possess such trade secrets knowing the same to have been stolen, appropriated, and converted without authorization, in violation of Title 18 United States Code 1832(a)(3); and,

(d)       aid and abet each other and attempt to do all of the above, in violation of Title 18 United States Code 1832(a)(4).

In particular, defendants stole, copied, received and possessed the internal computer files of three key engineers of Metaldyne, and a former Vice President of Metaldyne, without the authorization of Metaldyne.  Within these files were trade secrets, as defined in Title 18, United States Code, Section 1839, each of which is listed as a separate Count in the below table:

| Ct | Defendants | File Name | Source |
|----|------------|-----------|--------|
| 32 | LOCKWOOD (D-1) HAEHNEL (D-3) | "6L 07MY Initial Design.xls" | CD labeled "SL1" |
| 33 | LOCKWOOD (D-1) HAEHNEL (D-3) | "2505 Design.xls" | CD labeled "SL1" |
| 34 | LOCKWOOD (D-1) HAEHNEL (D-3) | "Mazda Question Log.doc" | CD labeled "A1" |
| 35 | LOCKWOOD (D-1) HAEHNEL (D-3) | "Tech Symposium June 99.doc" | CD labeled "A2" |
| 36 | LOCKWOOD (D-1) HAEHNEL (D-3) | "my07tif.tif" | CD labeled "SL1" |
| 37 | LOCKWOOD (D-1) HAEHNEL (D-3) | "1847133x1 (Forged Step).pdf" | CD labeled "SL1" |
| 38 | LOCKWOOD (D-1) HAEHNEL (D-3) | "2505-651.dwg" | CD labeled "SL1" |

| Ct | Defendants | File Name | Source |
|----|-----------|-----------|--------|
| 39 | LOCKWOOD (D-1) HAEHNEL (D-3) | "MTSC Process.doc" | CD labeled "A1" |
| 40 | LOCKWOOD (D-1) HAEHNEL (D-3) | "Powder Forged Connecting Rod Information for Huafu.doc" | CD labeled "Huafu Rod" |
| 41 | LOCKWOOD (D-1) HAEHNEL (D-3) | "NVG - LTA 11-21-03.pdf" | CD labeled "LW" |
| 42 | LOCKWOOD (D-1) HAEHNEL (D-3) | "Long Term Agreement - 10-28-03.pdf" | CD labeled "LW" |
| 43 | LOCKWOOD (D-1) HAEHNEL (D-3) | "2002 Sprocket Sales.xls" | CD labeled "LW" |
| 44 | LOCKWOOD (D-1) HAEHNEL (D-3) | "NVGSUMRY - 11FEB03 (revised for QMP @ $0.4506).xls" | CD labeled "LW" |
| 45 | LOCKWOOD (D-1) HAEHNEL (D-3) | "NVG 5 Year Forecast - DL 12-18-03 ECD mod 1 22 04.xls" | CD labeled "LW" |
| 46 | LOCKWOOD (D-1) HAEHNEL (D-3) | "0102197 Cost Sheet Apr 0303.pdf" | CD labeled "Lawn Garden Flanges" |
| 47 | LOCKWOOD (D-1) HAEHNEL (D-3) | "0102197 ID Mark.tif" | CD labeled "Lawn Garden Flanges" |
| 48 | LOCKWOOD (D-1) HAEHNEL (D-3) | "0102197 RFQ.xls" | CD labeled "Lawn Garden Flanges" |
| 49 | LOCKWOOD (D-1) HAEHNEL (D-3) | "Tubular 5-Year Forecast.xls" | CD labeled "Lawn Garden Flanges" |
| 50 | LOCKWOOD (D-1) HAEHNEL (D-3) | "International 2197 Proposal Quote.xls" | CD labeled "Lawn Garden Flanges" |
| 51 | LOCKWOOD (D-1) HAEHNEL (D-3) | "1735 Price Summary.xls" | CD labeled "Lawn Garden Flanges" |
| 52 | LOCKWOOD (D-1) HAEHNEL (D-3) | "MYSCAN_20040506_002.TIF" | CD labeled "Lawn Garden Flanges" |

32.     All in violation of Title 18, United States Code, Sections 1832(a)(1), (a)(2), (a)(3),

(a)(4) and 2.

## COUNT 53
### (18 U.S.C. § 1832(a)(2),(a)(3), (a)(4), and 2 –THEFT OF TRADE SECRETS AIDING AND ABETTING)

D-1    ANNE LOCKWOOD
D-2    FUPING LIU

33.    The General Allegations and paragraphs 5 through 10 (c) of Count 1 are incorporated herein by reference.

34.    On June 21, 2004, Eastern District of Michigan, Southern Division, and elsewhere, **ANNE LOCKWOOD** (D-1) and **FUPING LIU** (D-2), while aiding and abetting each other, did knowingly and intentionally transmit, deliver, send, communicate, convey, receive and possess trade secret information belonging to Metaldyne and relating to products traded in interstate and foreign commerce, and attempted to do so, in violation of Title 18, United States Code, Section 1832(a)(2), (a)(3), and (a)(4). **LOCKWOOD** and **LIU** acted with the intent to convert the trade secrets belonging to Metaldyne and for the economic benefit of a competitor of Metaldyne. In particular, **ANNE LOCKWOOD** (D-1) did transmit, deliver, and send, communicate and convey internal production cost information relating to Metaldyne's production of connecting rods to Huafu and to **FUPING LIU** (D-2), who received and possessed such information, in order to benefit Huafu. The defendants knew their conduct would injure Metaldyne.

35.    All in violation of Title 18, United States Code, Section 1832(a)(2); (a)(3); (a)(4) and 2.

## COUNT 54
### (18 U.S.C. § 1832(a)(3); (a)(4) – THEFT OF TRADE SECRETS)

D-2    FUPING LIU (D-2)

36.    The General Allegations and paragraphs 5 through 10 (c) of Count 1 are incorporated herein by reference.

37.    In July, 2004, in the Eastern District of Michigan, Southern Division, and elsewhere, **FUPING LIU** (D-2) did knowingly and intentionally, with the intent to convert information that included trade secrets belonging to Metaldyne, that were related to or included in products in interstate or foreign commerce, to the economic benefit of a person other than the owner thereof, and intending and knowing that the offense would injure the owner of the trade secret, receive and possess such information, and attempt to do so, knowing the same to have been stolen or appropriated, obtained, or converted without authorization, in violation of Title 18, United States Code, Section 1832(a)(3) and (a)(4), in particular, **FUPING LIU** did receive and possess a large number of files that had been stolen by **MICHAEL HAEHNEL and ANNE LOCKWOOD**, including the preform design for the International connecting rod. These files were found on **FUPING LIU**'s computer, and he possessed them in order to benefit someone other than Metaldyne, knowing his offense would injure Metaldyne.

38.    All in violation of Title 18, United States Code, Sections 1832(a)(3) and (a)(4).

## COUNT 55
### (18 U.S.C. §§ 1832(a)(2), (a)(3), (a)(4) and 2 –THEFT OF TRADE SECRETS AIDING AND ABETTING)

D-1     ANNE LOCKWOOD
D-2     FUPING LIU

39.     The General Allegations and paragraphs 5 through 10 (c) of Count 1 are incorporated herein by reference.

40.     That on or about June 23, 2004, Eastern District of Michigan, Southern Division, and elsewhere, **FUPING LIU**, (D-2) and **ANNE LOCKWOOD** (D-1) defendants herein, did knowingly and intentionally, with the intent to convert information that included trade secrets belonging to GKN, PLC, that were related to or included in products in interstate or foreign commerce, to the economic benefit of a person other than the owner thereof, and intending and knowing that the offense would injure the owner of the trade secret, transmit, deliver, and send, communicate, convey, receive and possess such information, and attempt to do so, in violation of Title 18, United States Code, Sections 1832(a)(2), (a)(3), and (a)(4),   In particular, **FUPING LIU** did transmit, deliver, and send, communicate and convey internal production cost information relating to GKN, PLC's  production of connecting rods to **ANNE LOCKWOOD**, who received and possessed such information, in order to benefit Huafu, knowing that this offense would injure GKN, PLC.

41.     All in violation of Title 18, United States Code, Sections 1832(a)(2), (a)(3), (a)(4) and 2.

22

## COUNT 56
(18 U.S.C. §§ 1832(a)(2); (a)(4) -- THEFT OF TRADE SECRETS)

D-2   FUPING LIU

42.   The General Allegations and paragraphs 5 through 10 (c) of Count 1 are incorporated herein by reference.

43.   That on or about December 20, 2004, Eastern District of Michigan, Southern Division, and elsewhere, **FUPING LIU**, (D-2) defendant herein, did knowingly and intentionally, with the intent to convert information that included trade secrets belonging to GKN, PLC, that were related to or included in products in interstate or foreign commerce, to the economic benefit of a person other than the owner thereof, and intending and knowing that the offense would injure the owner of the trade secret, transmit, deliver, and send, communicate and convey such information, and attempt to do so, in violation of Title 18, United States Code, Section 1832(a)(2) and (a)(4), in particular, **FUPING LIU** (D-2) did transmit, deliver, and send, communicate and convey internal production cost information relating to GKN, PLC's confidential business plan for China to SG Auto, a Chinese automotive parts manufacturer, in order to benefit himself and SG Auto, and knowing that offense would injure GKN, PLC.

44.   All in violation of Title 18, United States Code, Sections 1832(a)(2) and (a)(4).

## COUNT 57
(18 U.S.C.§ 1030(a)(4) -- COMPUTER FRAUD)

D-3   MICHAEL HAEHNEL

45.   The General Allegations and paragraphs 5 through 10 (c) of Count 1 are incorporated herein by reference.

23

46.     On June 8-10, 2004 in the Eastern District of Michigan, and elsewhere, **MICHAEL HAEHNEL** (D-3) did knowingly, and with intent to defraud, exceed his authority to access a protected computer. **HAEHNEL** acted in furtherance of the intended fraud, that is, the diversion of Metaldyne's confidential information to Chinese competitors, which he obtained from the protected computer and used in a manner to which he was not entitled. This information was valued at over $5,000 in a one-year period. In particular, **HAEHNEL** accessed the files of three Metaldyne engineers and, exceeding his authority, copied those files on to compact disks for the use of **LOCKWOOD** and the scheme to defraud Metaldyne.

47.     All in violation of Title 18 United States Code, 1030(a)(4).

### COUNT 58
(18 U.S.C.§ 1030(a)(4) – COMPUTER FRAUD)

D-2     FUPING LIU

48.     The General Allegations and paragraphs 5 through 10 (c) of Count 1 are incorporated herein by reference.

49.     On June 25, 2004 in the Eastern District of Michigan, and elsewhere, **FUPING LIU** (D-2) did knowingly, and with intent to defraud, exceed his authority to access a protected computer, in furtherance of the intended fraud. By his conduct, **FUPING LIU** obtained something valued at over $5,000 in a one-year period, to which he was not entitled. Specifically, **FUPING LIU** accessed the files of GKN and, exceeding his authority, emailed two GKN computer files, "020204a fpm 7701-56.xls," and "022004a fpm 8301.xls," to **LOCKWOOD**. The files had a value of over $5,000.

50.     All in violation of Title 18 United States Code, 1030(a)(4).

**COUNT 59**
(18 U.S.C.§ 1030(a)(4)  ·  COMPUTER FRAUD)

D-2    FUPING LIU

51.    The General Allegations and paragraphs 5 through 10 (c) of Count 1 are incorporated herein by reference.

52.    On December 20, 2004, in the Eastern District of Michigan, and elsewhere, **FUPING LIU** (D-2) did knowingly, and with intent to defraud, exceed his authority to access a protected computer, in furtherance of the intended fraud.  In doing so, **FUPING LIU** obtained something valued at over $5,000 in a one-year period, which he was not entitled to obtain. Specifically, **FUPING LIU** accessed the files of GKN and, exceeding his authority, emailed two GKN computer files,  "Site Comparison 9-29-04," and "China Sinter Business Case 1104 FINAL.xls," to SG Auto.  The files had a value of over $5,000.

53.    All in violation of Title 18 United States Code, 1030(a)(4).

**COUNT 60**
(18 U.S.C.§ 2314 –  INTERSTATE AND FOREIGN TRANSPORTATION
OF STOLEN PROPERTY)

D-2    FUPING LIU

54.    The General Allegations and paragraphs 5 through 10 (c) of Count 1 are incorporated herein by reference.

55.    On June 21, 2004, in the Eastern District of Michigan and elsewhere, **FUPING LIU** (D-2) did knowingly and unlawfully transport and cause to be transported in interstate and foreign commerce, from China, through California, stolen goods, wares, and merchandise, namely electronic files containing digital images of Metaldyne's forging and molding tools, which had a

value of $5,000 or more. **FUPING LIU** knew then and there that these electronic files had been stolen, converted, or taken by fraud, by him, from Metaldyne, in the Eastern District of Michigan, before he transported them in interstate and foreign commerce.

56.    All in violation of Title 18 United States Code, 2314.

## COUNT 61
### (18 U.S.C.§ 2314 – INTERSTATE AND FOREIGN TRANSPORTATION OF STOLEN PROPERTY)

D-2    FUPING LIU

57.    The General Allegations and paragraphs 5 through 10 (c) of Count 1 are incorporated herein by reference.

58.    On June 25, 2004, in the Eastern District of Michigan and elsewhere, **FUPING LIU** (D-2) did knowingly and unlawfully transport, and cause to be transported, in interstate and foreign commerce from China to Michigan, stolen goods, wares, and merchandise, namely electronic files containing the internal cost structure of GKN's connecting rods, which had a value of $5,000 or more. **FUPING LIU** knew the electronic files had been stolen because he converted them to his own use and the use of **ANNE LOCKWOOD**, by transmitting them by email to **LOCKWOOD**, in the Eastern District of Michigan, without GKN's authorization.

59.    All in violation of Title 18 United States Code, 2314.

## COUNT 62
### (18 U.S.C.§ 2314 – INTERSTATE AND FOREIGN TRANSPORTATION OF STOLEN PROPERTY)

D-2    FUPING LIU

60.    The General Allegations and paragraphs 5 through 10 (c) of Count One are incorporated herein by reference.

61.    On  December 20, 2004, in the Eastern District of Michigan and elsewhere,

**FUPING  LIU** (D-2) did knowingly and unlawfully transport, and cause to be transported, in

interstate and foreign commerce from China to Michigan, stolen goods, wares, and merchandise,

namely electronic files containing the internal business planning, cost and production information

belonging to GKN, which had a value of $5,000 or more.  **FUPING LIU** knew the electronic files

had been stolen because he converted them to his own use and the use of SG Auto, by transmitting

them by email to SG Auto, in the Eastern District of Michigan, without GKN's authorization.

62.    All in violation of Title 18 United States Code, 2314.


### COUNT 63
(18 U.S.C. § 1001 – FALSE STATEMENTS
TO FEDERAL AGENTS)

D-2    FUPING LIU

63.    The General Allegations and paragraphs 5 through 10 (c) of Count One are

incorporated herein by reference.

64.    On February 1, 2005,  in the Eastern District of Michigan, Southern Division,

defendant **FUPING LIU** (D-2) knowingly and willfully made materially false, fictitious and

fraudulent statements and representations to Special Agents of the Federal Bureau of Investigation

(FBI).

65.    **LIU** agreed to be interviewed in connection with the FBI's investigation of the

theft of trade secrets from Metaldyne, and in particular, the roles of **ANNE LOCKWOOD** (D-1),

and himself in such activities.

66.    **LIU** falsely stated that he had not met **LOCKWOOD** in person since early 2004,

when **LOCKWOOD** allegedly visited China for sight-seeing purposes.  In fact, **FUPING LIU** met with **LOCKWOOD** when she came to China in May and June of 2004 for the purpose of meeting with Huafu.

67.     **FUPING LIU** falsely stated that he never sent any confidential information to anyone.  In fact, **FUPING LIU** sent digital images of Metaldyne's forging and molding tools to Huafu, and sent GKN internal cost data to **LOCKWOOD**.

68.     **FUPING LIU** falsely stated that all he did was to introduce **LOCKWOOD** and Huafu.  In fact, **FUPING LIU** played an active role in trying to develop Huafu as a competitor of Metaldyne, sent Metaldyne's confidential property to Huafu, and generally took actions to assist to carry through this goal.

69.     **FUPING LIU** falsely stated that his wife, Shuqin ("Sue") Wang, had no role in the business of PPSE.  In fact, Shuqin Wang was the "President" of the "China Branch" of PPSE, Tian Hou Import and Export Company, Limited.

70.     The federal agents were then investigating the violations of federal criminal law relating to this matter, and **FUPING LIU** intended to affirmatively mislead their investigation.

71.     All in violation of Title 18, United States Code, Section 1001(a)(2).


### COUNT 64
(18 U.S.C. § 1001 – FALSE STATEMENTS
TO FEDERAL AGENTS)

D-3     MICHAEL HAEHNEL

72.     The General Allegations and paragraphs 5 through 10 (c) of Count One are incorporated herein by reference.

73.     On February 1, 2005,  in the Eastern District of Michigan, Southern Division,

defendant **MICHAEL HAEHNEL** (D-3) knowingly and willfully made materially false, fictitious and fraudulent statements and representations to Special Agents of the Federal Bureau of Investigation (FBI).

74.     **HAEHNEL** agreed to be interviewed in connection with the FBI's investigation of the theft of trade secrets from Metaldyne, and in particular, the roles of **ANNE LOCKWOOD** (D-1), and **FUPING LIU** (D-2) in such activities.

75.     **HAEHNEL** falsely stated that he had not had any contact with **FUPING LIU** since **LIU** left Metaldyne. In fact, **HAEHNEL** met with **LIU** when **HAEHNEL** and **LOCKWOOD** visited China to negotiate with Huafu in May-June 2004, which was after **LIU** had left Metaldyne, and had other contacts.

76.     **HAEHNEL** falsely stated that **LOCKWOOD** and PPSE never had any business relationship or dealings with **LIU** since he went to China. In fact, **LOCKWOOD, LIU** and **HAEHNEL** entered a business relationship together while **LIU** was in China for the purpose of developing Chinese competitors to enter the United States market in supplying powdered metal products.

77.     **HAEHNEL** falsely stated that he never took any network files out of Metaldyne for use by **LOCKWOOD** or PPSE. In fact, **HAEHNEL** made compact disks containing Metaldyne's confidential information and provided them to **LOCKWOOD**.

78.     The federal agents were then investigating the violations of federal criminal law relating to this matter, and **MICHAEL HAEHNEL** intended to affirmatively mislead their investigation.

79.     All in violation of Title 18, United States Code, Section 1001(a)(2).


THIS IS A TRUE BILL.


s/ Grand Jury Foreperson
GRAND JURY FOREPERSON

Dated: June 20, 2006


STEPHEN J. MURPHY
UNITED STATES ATTORNEY


s/ Sheldon N. Light
SHELDON N. LIGHT
Assistant United States Attorney


s/ Terrence Berg
TERRENCE BERG
Assistant United States Attorney
Dated: June 20, 2006

30

| United States District Court<br>Eastern District of Michigan | Criminal Case Co~ | Case: 2:06-cr-20331<br>Assigned To: Hood, Denise Page<br>Referral Judge: Scheer, Donald A<br>Filed: 06-20-2006 At 04:26 PM<br>INDI USA V. SEALED MATTER (3 DFTS)<br>TAM |

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to con

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| Yes        X  No | AUSA's Initials:  TB |

**Case Title:** U.S. v. D-1 ANNE LOCKWOOD; D-2 FUPING LIU; and
D-3 MICHAEL HAEHNEL, a/k/a MICHAEL HAHNEL

**County where offense occurred :**  OAKLAND AND WAYNE

**Check One:**        X Felony                □ Misdemeanor                □ Petty

___ Indictment/ ____ Information --- **no prior complaint.**
 X  Indictment/ ____ Information  X  based upon prior complaints [ Criminal No(s): 05-80090
                                                                                             as to D-1 and D-2)]
____Indictment/____ Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information:**

**Superseding to Case No: Judge:** _____

□    Original case was terminated; no additional charges or defendants.
□    Corrects errors; no additional charges or defendants.
□    Involves, for plea purposes, different charges or adds counts.
□    Embraces same subject matter but adds the additional defendants or charges below:

**Defendant name**                              **Charges**

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

June 20, 2006
Date

TERRENCE BERG
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone:  (313) 226-9160
Fax: (313) 226-2873
Terrence.Berg@usdoj.gov
P40295

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

5/20/04